IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DON G. ANGELL, D. GRAY ANGELL, JR., )
and DON R. HOUSE, in their )
Capacities as Co-Trustees of the )
DON ANGELL IRREVOCABLE TRUST )
UNDER INSTRUMENT DATED )
JULY 24, 1992, and ANGELL )
CARE, INCORPORATED, )
 )
                Plaintiffs, )
 )
                v. )      1:01CV435
 )
ELIZABETH B. KELLY, C. TAYLOR )
PICKETT, and DANIEL J. BOOTH, )
 )
                Defendants. )

**O R D E R**

A non-party, the Law Firm of Blanco Tackabery Combs & Matamoros P.A. ("BTCM Firm"), has filed a motion for a court order awarding it reimbursement expenses incurred in connection with complying with a subpoena issued by defendant Kelly. A brief background of the underlying litigation will be helpful in order to understand the issues before the Court.

The litigation arises from a 1998 merger of a company called Premiere Associates, Inc. ("Premiere") and Integrated Health Services, Inc. ("IHS"). The plaintiffs are former creditors of Premiere and have sued three former IHS officers for fraud and negligent misrepresentations. The misrepresentations allegedly arise from various agreements connected with the merger. The BTCM Firm represented Premiere in connection with said merger. It has also served as outside counsel for the Angell plaintiffs with respect to other matters. Following the merger, Premiere became an

IHS subsidiary. Unfortunately, after only two years, both IHS and its subsidiaries declared bankruptcy. At that time, it became known that Premiere's financial obligations to plaintiffs, for some reason, were subordinate to the major creditor of IHS. Defendants are alleged to have been responsible for this and/or made representations or failed to disclose facts to plaintiffs which allegedly should have been done prior to the execution of the agreements allowing the merger.

Defendant Kelly subpoenaed the BTCM Firm to produce documents that belonged to both Premiere and the Angell plaintiffs. Upon receiving the subpoena, the BTCM Firm immediately filed an objection pursuant to Fed. R. Civ. P. 45(c)(2)(B). The objections were: (1) the subpoena did now allow a reasonable time for compliance because of the scope of the request; (2) the subpoena would require the disclosure of protected attorney-client and/or work product documents; (3) the subpoena subjected the non-party BTCM Firm to undue burden in order to sort out protected documents which would result in significant professional, paralegal, and clerical expenses.

In conjunction with filing the objection, the BTCM Firm also wrote defendant Kelly proposing an agreement concerning the terms of production without court involvement. The letter explained that clients would have to be consulted concerning privileged documents and outlined the amount of attorney time it would take to review the documents, looking for both attorney-client privileged and work

-2-

product protected documents. It requested additional time and fair compensation.

Defendant Kelly quickly responded that costs associated with privilege review should be minimal, inasmuch as Premiere appeared to be willing to waive privilege. With respect to any documents for which plaintiffs would have a claim of privilege, Kelly thought the law firm representing plaintiffs would do the privilege review. The letter concluded that defendant did not agree to pay the BTCM Firm's fees for time spent complying with the subpoena, adding that defendant knew of no legal authority which would require such payments.

The BTCM Firm replied citing legal authority for payment of attorney's fees in conjunction with complying with a subpoena. Defendant reiterated that the agreement with Premiere made privilege review unnecessary. She further did not anticipate relying on the BTCM Firm to provide copying services, but would pay for them if used. Defendant, however, made clear that the fee would not encompass "pay for work such as preparing a motion to quash or time spent researching," etc. In response, the BTCM Firm reiterated that it intended to claim reimbursement for attorney time spent in reviewing documents.

Two months later, after the documents had been produced, the BTCM Firm sent defendant an invoice for expenses for all of the attorney time spent. Defendant replied, expanding on her previous letter denying reimbursement, except for ordinary copying costs. Defendant emphasized that courts have not allowed reimbursement

where a non-party was substantially involved in the underlying transaction and that here, the BTCM Firm was the attorney for Premiere. More importantly, citing Angell v. Shawmut Bank of Connecticut Nat. Ass'n, 153 F.R.D. 585 (M.D.N.C. 1984), defendant stated that in a case such as the instant one, expenses could only be awarded if the requesting party had agreed to reimburse the responding party, and defendant has always objected to costs other than ordinary copying costs. Finally, defendant added that the Firm's invoice was not sufficiently specific, and that a substantial amount of the costs on the invoice were for preparing the motion to quash.

### Discussion

The controversy between the parties raises several unique questions of law. The BTCM Firm argues that it is sufficient for a party to file an objection to a subpoena pursuant to Fed. R. Civ. P. 45(c)(2)(B) and then at a later time file a motion with the court to recover costs for production and have the court entertain the matter at that time. Second, the BTCM Firm contends that the costs recoverable by a non-party not only include attorney time for reviewing documents for privileged matter, but also for the time spent in preparing an objection to the subpoena and the subsequent litigation as to the objection. Defendant Kelly counters that the BTCM Firm's conduct is procedurally improper under Rule 45 and not permitted. It contends the BTCM Firm should have filed the objection and then waited until defendant filed a motion to compel as contemplated by Rule 45(c)(2)(B)&(3). Second, it asserts that

-4-

the attorney's fees part of the cost submission is not compensable and, especially so because the BTCM Firm is an interested party in the litigation.

Because a decision adverse to the BTCM Firm would end the matter, the Court will first start with defendant's claim that attorney's fees are not a compensable expense under Rule 45 and that only the actual copying costs themselves may be recovered. The Court finds defendant Kelly to only be partially correct. First, the parties have already noted that this Court in Angell v. Shawmut Bank, 154 F.R.D. 585, previously indicated that non-parties likely could be compensated for work performed by attorneys in conducting privilege review of documents for purposes of production. Id. at 591. Other courts have, in fact, specifically permitted attorney's fees for this type of legal work. Pacific Gas and Elec. Co. v. Lynch, No. C-01-3023-VRW, 2002 WL 32812098 (N.D. Cal. Aug. 19, 2002)(citing In re First American Corp., 184 F.R.D. 234, 240 (S.D.N.Y. 1998)); Williams v. City of Dallas, 178 F.R.D. 103, 113 (N.D. Tex. 1998). See Compaq Computer Corp. v. Packard Bell Electronics, Inc., 163 F.R.D. 329, 339 (N.D. Cal. 1995)(costs of paralegal's work).

It is another matter to say that the time spent preparing the objection would be a normal production cost pursuant to Rule 45. Such costs are not directly related to the production of documents. However, litigation costs would be properly allocable pursuant to Rule 37(a), but that only comes into play after a party has moved to compel pursuant to Rule 45(c)(2)(B). Rule 37 expressly allows

Case 1:01-cv-00435-WLO   Document 120-2   Filed 03/10/06   Page 5 of 12

for the award of costs, including attorney's fees for matters such as litigating the motion to compel.

The BTCM Firm contends to the contrary that First American, 184 F.R.D. 234, allows for such expenses when only an objection to the subpoena has been filed. First, it is not clear that the court in First American actually allowed attorney's fees for the time spent preparing the objection, as opposed to sorting documents to remove privileged information and/or removing confidentiality or privilege restrictions. However, even if such costs were allowed, they would have been countenanced by Rule 37, as previously mentioned. This is because in First American, after the non-party filed an objection to the subpoena, the requesting party filed a motion to compel the production, which the court granted. Under those circumstances, the court clearly had the authority to grant attorney's fees not only with respect to processing the documents pursuant to Rule 45, but also for litigating the motion to compel pursuant to Rule 37. However, in this case, defendant Kelly did not file a motion to compel. Instead, the BTCM Firm voluntarily turned over the documents without the involvement of the Court. Consequently, nothing else appearing, the BTCM Firm fails to show a basis for the Court to allow attorney's fees for the time it spent in objecting to the subpoena.

As for the attorney's fees directly related to the production of the documents, defendant Kelly also argues that the BTCM Firm has forfeited any right to obtain reimbursement because it voluntarily produced the documents when it should have simply

refused production and waited for defendant to file a motion to compel. The BTCM Firm, on the other hand, points out that an overly strict construction of Rule 45 will generate needless discovery disputes, increasing substantially the cost of litigation and time spent by parties and the Court. There is merit to both positions.

With the amendment of Rule 45 in 1991, which more sharply defined parties' and non-parties' rights and obligations, it is reasonable to construe the time limits and obligations more strictly. McCabe v. Ernest & Young LLP, 221 F.R.D. 423, 426 (D.N.J. 2004); Tudor-Saliba Corp. v. United States, 32 Fed. Cl. 609 (1995). On the other hand, as pointed out in Angell v. Shawmut, 153 F.R.D. at 590, the Court should be attuned to the fact that voluntary compliance and accommodation between parties and non-parties serves everyone's interests and that the Court, in appropriate cases, should require the parties to honor any private agreements, even though the strict provisions of Rule 45 have not been followed.

This case is only slightly different than Shawmut. Here, the non-party did file a timely objection prior to producing the documents and then seeking recovery of expenses. In Shawmut, the non-party did not file an objection, but also produced the documents and later sought recovery of its production costs. While the Court found that the non-compliance with Rule 45 would bar recovery of production expenses under Rule 45, it nevertheless looked to the interaction between the parties to see if there was

-7-

a private agreement. It stated it would construe such agreement using Rule 45 in order to aid in the interpretation.

The BTCM Firm contends that unlike Shawmut, this case falls within the provisions of Rule 45 because it filed an objection. It cites United States v. Columbia Broadcasting System, Inc., 666 F.2d 364 (9th Cir. 1992), and In re First American, 184 F.R.D. 234, for the proposition that Rule 45 does not require a non-party to seek reimbursement for costs prior to compliance with the subpoena, so long as it has filed an objection. The Court rejects that reading of those two cases because, unlike here, in both cases, the non-party not only filed an objection but, more importantly, the requester filed a motion to compel production, and the district court ordered production. It is true that the district courts did not fix compensation until after the production. However, the authority to do so derived from the fact that the courts entered an order requiring production pursuant to Rule 45.

In Columbia Broadcasting, the appellate court found that the non-party had, in fact, objected to the subpoena on the basis of the excessive costs and, therefore, everyone, both the party and the district court, were made aware of the non-party's intent to seek reimbursement. However, after the documents were produced, the district court refused to award the non-party costs of production -- holding that the request came too late. The court of appeals reversed. It held that once the district court entered the order compelling production, the non-party had no alternative except to comply or else face contempt. It found that district

courts have discretion to order compliance with a subpoena, but reserve the calculation of costs until after compliance. By not initially ruling on the request for costs, the court of appeals found that the district court effectively had reserved its decision. It constituted a "tacit approval of the reservation of the [non-party's] right to seek post-compliance reimbursement." Id. at 368. The court of appeals saw no reason to punish the non-party for the district court's inaction and noted that the party itself could have sought clarification of the order.

In First American, the non-party raised the issue of costs many times prior to producing the documents. Although it recovered its costs after the production, the documents were produced under compulsion from a court order. The significant factor in both decisions is that a motion to compel and a court order preceded the later determination of costs made after production of the documents.

Because the BTCM Firm did not wait for a court order, its production of the documents does not fall within Rule 45; nor, does it have a right to seek reimbursement post-production based on Rule 45. However, that does not mean that the BTCM Firm has no rights whatsoever. In a situation where a non-party voluntarily complies with a subpoena, but does not strictly follow Rule 45, the Court will look to the words and actions of the party and non-party to see whether they have reached some voluntary agreement. Shawmut, 153 F.R.D. at 590.

In the instant case, it is clear that the parties did reach some agreement. Defendant agreed that she would pay for any copying or related services. She specifically stated she would not pay for work such as preparing a motion to quash or time spent researching such issues. With respect to the time spent reviewing documents for privilege and efforts spent to remove such privilege, it appears that defendant Kelly was under the impression that this would not be an issue because a release of privilege had been secured from Premiere. From defendant Kelly's point of view, that meant there should be no time spent in reviewing documents for privilege.

However, at the hearing in this matter, the Court learned, and apparently defendant for the first time, that the BTCM Firm spent substantial time reviewing the documents for privilege because the Angell plaintiffs had a joint defense agreement with Premiere and, therefore, the documents needed to be reviewed for privilege in any event. The Court finds nothing in the parties' correspondence which would have alerted defendant Kelly to this fact. Instead, defendant has consistently maintained that she did not intend to pay the BTCM Firm for any attorney time spent in responding to the subpoena. For this reason, it would not be fair to say that defendant Kelly agreed to pay for attorney's fees resulting from the production of the documents.[1] For this reason, the Court will

---

[1] This construction of the parties' agreement is further buttressed by the fact that early on, defendant Kelly stated that it was her understanding that documents sought which involved the
(continued...)

deny the BTCM Firm's request for reimbursement for the production of documents other than the cost of copying. The BTCM Firm's invoice sought to recover $78.00 in actual copying costs. At the hearing on this matter, defendant Kelly's counsel did not disagree that this was a reasonable amount. It is only fair that defendant Kelly pay for this benefit and it will be ordered accordingly.[2]

---

[1](...continued)
Angell plaintiffs would be reviewed by Angell's counsel. It is not clear why Angells' counsel did not conduct the privilege review of the Premiere documents as well. This weakens the BTCM Firm's claim for reimbursement.

The Court would be remiss to not comment on the fact that a party, who subpoenas an attorney in order to get documents rather than the actual owner, incurs substantial risk that the Court will grant reimbursement costs. For example, in this case, defendant Kelly sought documents belonging to the Angell plaintiffs directly from the BTCM Firm. Had defendant Kelly sought the documents directly from a party, there would be far less of an issue concerning defendant Kelly having to pay for a privilege review. On the other hand, because defendant Kelly sought the documents from the law firm, it created a situation where it not only might be responsible for paying for an attorney-client privilege review, but an additional payment for a privilege review for work product. <u>Williams v. City of Dallas</u>, 178 F.R.D. 103, 113 (N.D. Tex. 1998).

[2]Defendant Kelly states that the BTCM Firm should not receive any compensation because it is an interested party in this litigation. Defendant points out that the BTCM Firm represented Premiere and prepared some of the very documents on which plaintiffs' claims against the defendant are based. And, in the instant case, defendant Kelly could not seek those documents from Premiere because of the bankruptcy. Nevertheless, the subpoena to the BTCM Firm went beyond the Premiere documents and included documents from other sources. Moreover, under defendant Kelly's theory, law firms would always be interested parties solely on the basis that they provided legal services. However, medical clinics have not been found to be interested parties merely because they provided medical services to a plaintiff. <u>Broussard v. Lemons</u>, 186 F.R.D. 396 (W.D. La. 1999). Attorneys are not in the same position as the accountants in <u>In re First American Corp.</u>, 184 F.R.D. 234 (S.D.N.Y. 1998), who provided the accounting services to the bank involved in one of the largest bank frauds in the world where there may have been third-party reliance on the accountant's work. Nor
(continued...)

**IT IS THEREFORE ORDERED** that non-party Blanco Tackabery Combs & Matamoros P.A.'s Motion for Costs (docket no. 72) is granted in part and denied in part and defendant Kelly shall forthwith pay $78.00 as reimbursement for copying expenses incurred by Blanco Tackabery Combs & Matamoros P.A.'s compliance with the subpoena.

/s/ Russell A. Eliason
United States Magistrate Judge

March 10, 2006

---

²(...continued)
are attorneys in the same business position as the American Petroleum Institute which collects documents and information from its industry members and promotes their causes, and where the precedential involvement of the underlying lawsuit would be a real concern to that non-party's business interests. It is clear that the extent of interest that the BTCM Firm has in the litigation is relatively minor compared to those cases where the non-party was ordered to share some of the expenses. For all these reasons, the Court declines to find that the BTCM Firm is an interested party to the extent that it should not be allowed to recover any reimbursement costs.